Please be seated. We're happy to hear your argument in our second case, number 134427, United States v. Altvater. Your Honors, good morning. My name is Gerald Rutter and I'm happy to be here on behalf of the appellant, Darlene Altvater. The appellant brings this appeal, Your Honors, and challenges the restitution ordered by the District Court after a jury found her guilty of two counts of violation of Title 18, Section 1920, which deals with the improper receipts of workers' compensation benefits. She was a postal worker, was injured in the year 2000, had received benefits for many years, and the jury was asked to find out whether or not, in their opinion, she had failed to properly fill out what are called Form 1032s, which are supplied by the Department of Labor every year. And they ask certain questions to a claimant concerning whether there's any changes in their physical condition, any changes in their employment status, whether they've earned any income, and the like. There's been case law settled now by, I think, the Supreme Court as well as this circuit, which has told us pretty clearly that the District Court is duty-bound to find the difference between the actual amounts of money received by a claimant for workers' compensation benefits, and the Court is to also find how much the claimant should have received in benefits absent any fraud. That is what the District Court attempted to do, and again, she found that some $59,592 and change was that which the claimant should not have received absent the fraud. We have essentially, Your Honors, two primary arguments we would like to advance. The first deals overall with the manner by which the District Court came to the conclusion that it reached. In that, we believe it was error for the Court to use what is called a constructed job analysis to decide what Ms. Altvater's wage-earning capacity was during the time that she was The reason we believe that is because what should have happened is that the District Court should have decided what her actual income was. Our theory is, our belief is, is that when it comes to matters of restitution, it's the District Court's responsibility. You're talking about before or after the forms were falsified? Well, Your Honor, I'm actually going to address that argument, that particular question, later on. Oh, you said actual. I just want to know what period are you talking about? Well, in this case, we're going to be talking, Judge King, about the period that Judge Chasanoff found, which is from August of 2008 all the way through December of 2011. But to answer, I think, the question you're posing... But there's two different forms. Well, there are two different forms, yes. She was convicted of two counts. Yes, 2009 and 2010, the same form, which covers two different periods. The periods are, what are the two periods? What's the period for count one and what's the period for count two? Well, for the first count, it would be August of 2008 until the time the form was signed in around October or November of the following year. And after 2010, it's 15 months prior to when it was signed in around December of 2010. You go backwards in time. So you say it's all prior to the date of signing. I'm saying it's all prior to the time of signing. They're both signed. One's found in November 24th of 2009, one December 9th of 2010. You say it's 15 months back from each of those. For both, yeah. So you even have some overlap. You would have some overlap. You've got two months of overlap in there. Yes, but I think that's just the way they do it, Judge King. It's a 15-month period, but the forms are sent out... And she's convicted of lying on those on what happened before that. And you're not challenging the convictions? No, Judge King... You're only challenging the calculation of the loss for restitution purposes. That's right. We concede... Which is only $59,000. That's probably not fair, but it's $59,000. Yes. And what do you think it should be? Your Honor, we don't... We don't know what it should be because... You don't know what it is? We do not know what it is. Well, why can't you figure out what it is? You say it's wrong, then don't you have an alternative number? No, Your Honor, I do not have an alternative number. Our position is that the district court should not have used this constructed job technique in order to arrive at what... That she should have used an actual loss technique. Her actual income. Now, we know this, Judge King. We know this. The government's testified that if the actual income... Is this a trial testimony or sentencing testimony? This is a sentencing hearing. This is a sentencing testimony. And I think... She went to trial, right? Or did she plead guilty? No, no. It was a trial. Five-day jury trial. That's what I thought. During the trial, Judge King, during the trial, actually... Did it prove a loss during the trial? No. The amounts were not... The amounts weren't the primary concern. The primary concern... No, it did not. It did not. That would help things a little bit. Pardon? That might have helped things some. It may have helped some things, yes. She was asked, Your Honor, Ms. Wynn was... She testified... Did you request your instructions that asked for the amount of loss? Your Honor, I didn't try the case, but I don't believe I saw it. No, I didn't see that. I did not see that in the record. And quite frankly, Your Honor, there were questions sometimes raised by myself as to whether or not it would be appropriate to have attacked the conviction, but I concluded that when you look at the form, it has these very specific questions, and Ms. Elevator didn't answer them. And so one who reads her responses in 2009 and 2010, in fact, would know or would not have known that she, during those two years, was, in fact, working in her own business. What we did cite in our papers, which we think to be significant, is that Ms. Elevator did in her 2006, 2007, and 2008 1032s, made it very clear that she was involved in her own, or rather, in a family business. She even indicated what kind of work she did throughout that time frame. The reason we think it's important is because Ms. Wynn testified that as to 2009 and 2010, had the OWCP known that she was involved in her own business, that they would have had a claims examiner write her a letter and inquire as to what kind of work, how many hours are you working, what kind of money are you making, and the like. Well, that's not quite true, Your Honor, because she was asked specifically whether or not such a letter was written to Ms. Elevator in 2006, 2007, or 2008, when she, in fact, did tell the Department of Labor that she was working. And Ms. Wynn testified that she should have received a letter from a claims examiner because she indicated that she had been working, but she didn't. And I'd point this out further. In 2011, when she amended her 2010 and 2009 1032 forms, and actually stated what her actual income was, she still did not get a letter from a claims examiner asking for more money. You're saying the government messed up here, too. I'm saying the government messed up here, too. It's important, Judge King, in terms of this issue of restitution. I'm not faulting the government for bringing the case and for the form was not properly filled out. But we're talking about... Well, it has to have been, to be convicted, it had to have been fraudulently filled out. That's right. Had to be specific intent to commit fraud. Agreed. The question... And you don't contest that. We do not. She falsified the form. She falsified the form. She should have filled it out... And doesn't the form support eligibility for continuing receipt of benefits? Your Honor, there's some kind of a disclaimer somewhere in that document that does say that this is important. What's your answer to that? The answer to that is, Your Honor, my answer to that is our second argument, which is, with restitution, the only thing that the district judge is allowed to actually restore is the offense of conviction, which is a perjury case, which has nothing to do with continuing benefits. It has to do with whether she lied about her condition the prior 15 months. Those are two very different things, Judge. It's not relevant conduct in any way, shape, or form. Well, Your Honor, one might argue it's relevant conduct, but for restitution purposes, relevant conduct cannot be taken into account. So that's your argument. That's my argument. Restitution is offense of conviction. It is. Was there any instruction on the offense as an element of the offense that took into account what was going to happen post-execution of the form? No, sir. And Judge King, we all pretty much know that this is a perjury case. It's false statement, but it's a perjury case. And what the Department of Labor is trying to figure out is, did anything happen in the last 15 months that we should know about? A few minutes ago, in response to Judge Davis, you said, yeah, there's something on that form. It's the second sentence. This information will be used to decide whether you are entitled to continue receiving these benefits or whether your benefits should be adjusted. Agreed. That's what she said. But Judge Motz, it's our position. It's our position that in terms of the offense of conviction, that is the perjury count that she's convicted of. She's convicted of lying about what her condition was, I guess, or what her income was, I guess. And I'm not being rhetorical here. I'm not too sure what the jury found, because they didn't have to designate what they found. They just found that the form wasn't filled out properly. Why wouldn't that be a material fact in the context of the charge and the indictment, in the two counts? Your Honor, what would be a material fact? Be a material fact that they were going to use this stuff to figure out what to pay her in the future. Well, the indictment, I think, would have to rule, Judge King, in the indictments. The allegation is she falsified and concealed a material fact. Yes. Right. And that material fact. And they say, we want to know this because we're going to decide how much to pay her later. That's not the material fact of the lie, Judge King. The material fact of the lie is either she was working or she had an income. Were the instructions limited to that? The materiality to what occurred beforehand? No, Judge King, there was no discussion of jury instructions at all concerning that matter. There were very standard jury instructions that here are the elements of perjury. And it was very generic. What I think that this panel needs to concentrate on is the fact that the lie deals with matters that happened before the form was filled out, whether or not she had income, whether or not her physical condition had changed. Whether or not, Judge Motz, there may have been some consequential result in her continuing benefits, that is relevant for loss purposes, I admit. It's relevant conduct for loss. And Judge Chazanel, rightfully so, was allowed to consider that, at least in my view, under 2B1.1, because it is relevant conduct what's going to happen as a result of that lie. But in terms of restitution, I think there must be more of a finer kind of analysis. And there, the offense of conviction only can be considered and relevant conduct cannot. So the government would have to bring a civil action and reduce the judgment, any excess beyond the 15-month look-back in your submission. I think, Judge Davis, they could have added a count for theft of government benefits, because she got those benefits. Well, sure, they could have done it that way. They may have. But on this indictment, your submission is basically the loss amount isn't, the proper restitution order doesn't cover all of the loss. And so the government either would have been required to add a count to the indictment or bring a civil action after the conviction, or perhaps could have asked the judge to impose a fine to cover the gap. Of course, the fine probably wouldn't, if the fine was going to go back to the Department of Labor so they'd be made whole, that would have worked. But in terms of this court's jurisprudence, this court's been very careful. Her Honor wrote an opinion, and Judge King was... Didn't we know about this? Yeah, and so it's been very careful about this parsing out of restitution versus loss. And this is a case where the district court didn't properly parse out the difference between restitution and loss. And the amount of money from the last 11 or 12 months, which the court found was subject to restitution... Excuse me, if we agree with you and send it back, could we send it back for consideration of a fine, or would that violate the Eighth Amendment in some fashion? Your Honor, I've read again with some of the Fourth Circuit decisions that one would have to decide whether the court took that into account. And Your Honor, by the way, she did. Judge Chasno actually mentioned in her comments that there's going to be no fine... Because of the restitution. Yes, she actually made that point. So the answer would be, in your question, yes. So we could send it back, and Judge Chasno could reduce the restitution and impose a fine? Unfortunately, I think the answer is yes. Assisted with double jeopardy principles, obviously. I think that is correct. Well, so where does this argument go for you? Your Honor, where the argument goes is that this court should find that in the first instance, the district court should not have used the constructed job analysis to determine restitution. It should have used an actual income analysis. If we go to your second argument, if we reject your first argument, go to your second argument, accept it, and send it back for assessment of a fine, what have you gained by this litigation? Well, Your Honor, as to the second question, what I'm saying is that this court should find that the court cannot restore or order a restitution from December of 2010 through December of 2011. Whether or not Judge Chasno chooses to replace with a fine is a separate matter. I think we understand your argument. Let's hear from the government. Thank you. Good morning, Your Honors. May it please the Court. I'm Hollis Wiseman, representing the government in this case. To answer a question that Judge King asked a few moments ago, the jury instructions did not go to the total amount of the loss, only the element in the statute and in the indictment that the jury had to find that the defendant intended her misstatement was intended to reduce benefits of over $1,000. Right. That's the offense. And that's what, as I understand, that's what his proposition is, that the restitution could only go to the offense of conviction, which can be different than the loss. I mean, your position is that you're entitled to get restitution on what occurred after, for example, December of 2010 for the next year or 15 months? Exactly. Is the 15 months what we're dealing with both before and after? It goes back 15 months and ahead about a year. Ahead about a year and back 15 months. Well, if you can go ahead about a year and get restitution for what they got as a result of lying on the form, why can't you go back, too? Because you're saying it's prospective that they fill out the form, then the offense of conviction must be called the loss that went forward. But you're trying to have it both ways. Well, the— Maybe you get the—there is overlap there. You'd get a big chunk of it after the December or the November of 2009 false form. Going forward, you'd get your stuff there. But the stuff prior to November the 24th, 2009, you want to go backwards, too. You want—the government wants to have it both ways for restitution purposes. Because— It looks to me like you ought to be consistent. The form is consistent. The form makes clear what— Well, the form is this, what did you do earlier? It's what—it's relation back. There's a warning on it. It's going to be used to figure out what your benefits are. There's a warning, but the—but it relates back. And that's what the indictment is about. It talks about lying on the form as to what was historical. What did—did you make any money? Or whatever it says, you're lying on the form. She lied on the form as to what had happened in the last 15 months or last year or whatever it was. But the form explicitly told her— It does. —what she was— It warns you. They tell you on your tax return if you don't—if you falsify the return, you're going to get prosecuted for tax evasion and stuff, too. They put all kinds of warnings. We—you know, they—if you lie to the FBI, you can go to jail for five years. On a—on a statement of personal history, there's a lot—they have warnings on everything. But that is not what you're telling me was not part of the offense of conviction, and there was no instruction to that effect. What is your argument that this is part of the offense of conviction? Because the statement that she made was intended to reflect her continued receipt of benefits. But there was— Was that an element? Just a minute. Was that—that's not exactly what the indictment said. Did the jury instructions say that? You were trying to read the jury instructions, and I'm looking at page 16 of the Supplemental JA, but I don't have the jury instructions in front of me. They were not included here. Right. So, but you know what they are. So, are they different than the— The charge required— The jury instructions required that her false—did falsify and conceal a material fact in connection with an application for and receipt of compensation and other benefit and payment. That was an element in the jury—in the indictment, in the statute, and in the jury instructions. Because in the indictment, it says—it goes on to say, material false form 1032 on which she failed to disclose that in the previous 15 months. In other words, are you reading in context the jury instruction? What does it say before and after that? Are you reading me a jury instruction? No, I'm reading you the indictment. Okay. Well, it says she submitted and caused to be submitted to the government a materially false 1032 on which she failed to disclose in the previous 15 months. She submitted and caused to be submitted a materially false form 1032 on which she failed to disclose in the previous 15 months. She was self-employed, blah, blah, blah. So, I'm— Right. That's the false statement. Right. But then you look at the restitution act, the mandatory restitution act, which says the restitution amount is the intended loss. The amount that the defendant intended to have diverted fraudulently to her own use. So, your argument is that this is the elements, the elements, the same elements that gave up the conviction provide the basis for the restitution. And then you look at the restitution statute to say you get the intended loss rather than the guidelines or anything else when you figure out the loss amount. Exactly. And that's what the judge found based on the testimony of the OWCP employee, Angela Wynn. That still doesn't explain why you get it both ways. The intended loss you say is prospective, right? At the next, the post-execution of the form. You said that's what the restitution act says. So, you get it for the 12 months after December of 2010, and you get it for 12 months after November of 2009, but then on the first count, you want it the previous 15 months, too. So, you're talking out of both sides here. No, because— The government's being inconsistent. Because the testimony was, and the judge found— I understand all that, but the offensive conviction in the restitution act, you've got to have some hook to whether you can get it post or previous or both. And what you said there, the restitution act makes it post, the intended loss, which would have been, but that doesn't get it for the year or 15 months previous to the first form. It does, because Angela Wynn, the expert, testified that they would have gotten back— Well, experts can't change the law. You can't put on expert testimony and change the law. She testified that they would have recouped, they would have attempted to recoup the amount that was fraudulently given to Ms. Altvader, and the judge said in her finding at the restitution hearing that she agrees that OWCP would have gotten back that money had they been correctly apprised of the defendant's condition. The judge found that. I think her language was, I am satisfied that OWCP would have recovered that money or attempted to recover that money. And because that would have been the action of the Labor Department, it was the direct result of the defendant's material false statement. Well, maybe they get that at an administrative proceeding, they get that, but we're talking about what you can get in a restitution order issued by the court related to the offense of conviction. Because the intended loss that Ms. Altvader was involved with was the entire period of time. The false statement, the past year, as well as what she hoped to continue getting, that was her intent. And that's the statute. You don't contend this is a continuing offense, do you? No, we did not. Don't you have to in order to get to where you want to get to on a restitution? The judge ruled that we couldn't get the previous three years because it was not a continuing offense. She had her own business at least from 2005. So she ruled against us as to that. But when the defendant made this material false statement that said, I don't have a any income. And she made two of those that she was prosecuted on. Right. 2009, 2010. And she intended to continue to get her benefits, and she intended to keep the benefits she had already received, certainly. Well, she intended to keep, which go back several years. Right, and we can't go back. And the judge ruled we couldn't go back before the period covered by the false statement, but the false statement covered the previous. But you might go back administratively. You're talking about for the offense of conviction, you said she executes these forms every year. So what can you get for a false form for one year? For the, what was in. You get the benefits for that she lied about and got in the following year after she lied on the form. Which would be for 2009, she got them for the 12 months after that. For 2010, she got them for the 12 months after that. And that would be the restitution you're entitled to. But then that undermines your proposition that you can go back. The continuing offense thing that the judge barred, she didn't lie to you until 2009 on this record that she was indicted for. So presumably what she said before was all true. She wasn't prosecuted on it. And so you're trying to have your cake and eat it too by going forward post-2010 and going backward pre-2009 and plus the year in between, after the 2009. You want to get 24 or 27 months on the 2009 false form and 12 months on the 2010 false form. Except they overlap. What's that? They overlap. Well, they overlap two months. But you want to get twice as much out of the 2009 lie false form as you do on the 2010 false form. And your logic doesn't fit. I don't think. Maybe it does. I'll go back and read your brief and the cases. And maybe it does, but your explanation doesn't seem to make sense. The judge found at the hearings that the 2009 form went back 15 months. We submit that the judge correctly found that she intended to keep that. Both forms went back 15 months. That's exactly what they say on them. And that's what the indictment says. They went back 15 months. What did you do in the past 15 months? And she lied. But you said it was for the purpose of getting money for the next 12 months. And that's what you're entitled to restitution for. You said that's what the Restitution Act gives you. And if that's the case, to get the stuff prior to the 2009 false form, you need to go back and prosecute her on the 2008 false form. Well, we submit that she intended to keep the money she had already gotten. That was her intended, her intent. She also intended to keep getting money. And that's clear because she signed the form and the form makes it explicit. I give you all that. But we have to also deal with the fact that the offense of conviction is that statute. And that's what this thing thinks. She lied on the form about what happened in the previous 15 months. You say, on 2010, we're not interested in the previous 15 months. We're interested in the next 12. We're interested in both. We're interested in the next 12. No, we're interested in both, Your Honor. And that's why we put the forms in the appendix, to show that she knew exactly what she was doing. She knew she was lying. I'm sorry. What's her intent to retain future benefits? How does that help you, given the indictment? Because that's what the Restitution Act refers to, the intended loss. Oh, I see what you mean. So the restitution is applicable to what she intended to defraud the government of, money that wouldn't have gone to her. Would this not be covered by 611, theft of government property? Is that? 641. 641, thank you. Possibly. Can you give us an analogy that would make this? Because I think we're heavily into this series of restitution cases, as your colleague has talked about, where we've tried to separate out restitution. If you don't, if it doesn't come from the elements of the offense, even though the bad person did it, you know. Well, an analogy for what? In this case, I think the loss and the restitution were equal. Because that's the way the Department of Labor has worked all this. I guess the restitution for the argument that Judge King has been questioning you on so closely, about forwards and backwards. And I remember when I was coming down here to argue cases, I would try to think of analogies. Because the court seemed to be enthralled by them. And I think the court maybe still is. But if you don't, we'll have on that. I didn't, because Judge Chasnow made it very clear that she believed that this was an applicable period of time. So if you had indicted her, I assume that it's a five-year limitations on this. If you'd indicted her four years, 11 months, and 28 days after that 2010 form, you would have, your argument would be, the entire five years of benefits would be covered by that. That you don't, you don't really need to do the form every year or every 15 months. One false statement, one false statement would get you five years plus 15 months look back of fraudulently received benefits. I guess if we had... As a restitution. If we had alleged a continuing aggregate offense, that's the way, the distinction. No, I'm assuming the same indictment here. You have one count on the 2010, you'd get, in other words, your point is, you would get, for one false statement, you would get potentially, what, 70, almost 75 months of benefit. We would have to allege a scheme, a scheme. Why would you have to allege a scheme? Because the court has said so. Not an argument for restitution, you know. Why would you have to, yeah, why would you have to allege a scheme on restitution? I don't see how my hypothetical is different from your answers to Judge King. Because the Huey case said that the, it has to be the count of conviction. It can't be relevant conduct. Right, so my hypothetical says a count of conviction continues for four years and 11 months. You just didn't do another form. I think in this case, the count of conviction is, I lied on this form. Right. I lied about the previous 15 months and my whole purpose was getting, continuing to get benefits for the next year. So it goes on for four years. So that's the count of conviction. So four years and 11 months, you would only need one count. It's the future that you lied on, the third thing that you just told us about. I lied on this, I lied going back, and I lied and I intended in the future. And the four years would be the intent in the future. I'm not sure that the proof would be consistent with that. Because the Department of Labor would say, we do these forms every year. And we do look at it. But if they neglected to get the form, if they neglected to have her fill out a form, and you go to that hypothetical of Judge Davis's, four months, four years and 11 months prior to the indictment, she filled out a form and didn't fill out another one. And she got four years and 11 months after the form of extra benefits. You would say you get restitution for those four years, 11 months, plus the previous 15 months, which would be six years and two months of restitution based on the one form. I don't think I would be that cavalier, because- Well, you wouldn't be that cavalier. You're being that cavalier now. You're being that cavalier now. See, that's what we're trying to figure out, the difference between that case and yours. As I read the fact, she filed a form after the latest form that you based your indictment on. Is that right? No, she did not. Well, then why did you just go forward a year? Because her benefits terminated then. She got another year, and then her benefits terminated. OK, but it's OK. So we're hypothesizing her benefits didn't terminate. How far forward would you be able to go? We would have to look at the evidence that we would have to prove what happened. If the Department of Labor is completely negligent and never bothers to look again, we wouldn't be bringing that in front of a jury. Well, why wouldn't you? But you're not bringing this in front of a jury. You're bringing it to a judge and saying she got money she wasn't entitled to. And you'd be entitled to it back. Just because a government employee goofs up doesn't mean that people get to keep their money. Now, I'm not in favor of that at all. You ought to get the money back. If they got their money under the law that they lied about, you ought to be able to get it back. The question is how much they can get back from a restitution order based on a prosecution. I would think you would have to say if she was still getting the money and there's no new form that you'd be entitled to that restitution. I guess that would might be a possibility. But I have to look at any case at what a jury is going to find credible. And in this case, they found that she lied on these two forms. Yeah, but I understand you. But you understand in Judge Davis's hypothetical, there'd be the same finding by the jury. It was no different finding. It's just that the government didn't discover it for four years. It was four years. It's easier. So would you get the restitution for the four years that follows the last false statement? If the jury found her guilty of that and it was the result of what she intended. If the jury found her guilty of lying on the form and as a result, she continued to get four years of benefits. Right. Yes, that would be her intent. That would be her intent to diversion, unjustified diversion. And that would fit under the restitution act. But it's taken us a long time to get to that answer. I mean, I think that's right. That has to be your answer, doesn't it? Yes. It's just, I mean, there wouldn't be any different finding. There wouldn't be, according to you, any different charging, any different instructions, nothing different. That's correct. So you still don't even need the second count in this case. Under your theory, but it exists, we got a surplus. I understand. But but really for purposes of restitution, the second count is irrelevant because she lied on the first one, on the first form, right? Yes, but she had the opportunity, I guess, to correct it the second time. Yeah, it would it would be correct. But she did have the opportunity to correct it because she got another form. Thank you. Does the record tell us how the government did discover this? Yeah, the record doesn't. The evidence of trial was they got a tip and she was in the press. She had this business and it got publicity and it was in the newspapers and it was on TV. And from that, the investigation. I thought the earlier form, she disclosed it. She said she didn't prosecute her on. She put down that she'd been working and stuff. She said she changed it on these. She's already not. She'd already gave you the information previous year. She said she helped in a family business about 10 hours a week. All you had to do is follow up and ask what the family business was and how much. You probably don't have a lot of. Yeah, you're doing. The earlier forms were minimal. The earlier forms skirted and would have been more difficult to prove. That's quite frankly what we look at. Thank you. Thank you. Your honors, unless you have questions, I would defer. I'm happy to answer any questions the court may have. We can tell you're an experienced litigant. We're happy to greet the lawyers, and then we'll take a short recess. This court will take a brief recess.
judges: Diana Gribbon Motz, Robert B. King, Andre M. Davis